IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHIEN HWA KATHERINE | : | CIVIL ACTION |
| TRELENBERG | : | NO. 12-3603 |
| | : | |
| v. | : | |
| | : | |
| 21ST CENTURY INSURANCE AND | : | |
| FINANCIAL SERVICES, INC. | : | |
| | : | |

O'NEILL, J.                                                                                            July 30, 2013

## MEMORANDUM

Plaintiff, Shien Hwa Katherine Trelenberg, filed a complaint against 21st Century Insurance and Financial Services, Inc. [1] alleging disability based discrimination and retaliation, age discrimination and discrimination based on her race and national origin. Defendant now moves to dismiss plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, I will grant defendant's motion in part and deny defendant's motion in part.

## BACKGROUND

During the period of the alleged discrimination, plaintiff worked as a mail clerk at defendant's Wilmington, Delaware location. Am. Compl. (Dkt. No. 23) at ¶¶ 7, 12. Plaintiff began working on September 12, 2005. Id. at ¶ 12. She alleges that on June 28, 2006, her "right wrist was injured while lifting 70 lbs. of copy paper," an incident that was witnessed by two co-workers. Id. at ¶ 20. Plaintiff saw a doctor who wrote a note stating that plaintiff could not lift more than twenty pounds for one month. Id. at ¶¶ 21, 22. Plaintiff identified her wrist injury as

---

[1] Defendant was formerly known as AIG Marketing Inc. "and was subsequently acquired by Farmers Insurance Exchange, Fire Insurance Exchange, and Truck Insurance Exchange in 2009." Dkt. No. 8-1 at ECF p. 1.

"tenosynovitis," but does not allege whether the doctor diagnosed her with this condition.  <u>Id.</u> at ¶ 42.  On July 11, 2006, she gave a copy of the doctor's note to one of her supervisors, Frank Ginnocchio.  <u>Id.</u> at ¶ 22.  Plaintiff alleges that Ginnocchio "made no accommodation for [her] lifting restrictions."  <u>Id.</u> at ¶ 23.  On July 20, 2006, she made a second request for accommodations which was again denied by Ginnocchio.  <u>Id.</u> at ¶ 25.  Ginnocchio referred plaintiff to defendant's disability carrier and she reported her condition "even though she did not qualify for disability."  <u>Id.</u> at ¶ 45.  In early August 2006, plaintiff alleges that her "right wrist was in such pain, she had to take five vacation days off from work."  <u>Id.</u> at ¶ 26.  Even though her last allegation of pain stemming from her wrist injury is in August 2006, plaintiff alleges "the managers and supervisors . . . exacerbated her injury by requiring her to continue to work without rest or assistance during the day . . . ."  <u>Id.</u> at ¶ 44.  Plaintiff alleges that her supervisors failed to report her workers compensation claim to defendant's Human Resources Department.  <u>Id.</u> at ¶ 45.  She claims that she then reported her condition to Human Resources and argues that defendant subsequently "retaliate[d] against [her] by discharging her on April 15, 2009 . . . ."  <u>Id.</u> at ¶ 48.

Plaintiff also contends that defendant discriminated against her because it allegedly tolerated age based harassment directed at her and plaintiff's supervisors failed to report this harassment to Human Resources.  <u>Id.</u> at ¶ 53.  Plaintiff alleges that on October 28, 2008 her 36 year old co-worker, Jim Lawler, "slammed a mailroom cart into [her] leg," and despite plaintiff's protests, "Supervisor McCormick . . . ignored the incident."  <u>Id.</u> at ¶ 51.  Plaintiff further alleges that in response to plaintiff's complaint "about the temperatures reaching 80 degrees in the mailroom . . . ." Ginnocchio informed plaintiff "that she must be having hot flashes."  <u>Id.</u> at ¶ 29.  Plaintiff specifically alleges that the term "Chinese cougar" was used when referencing plaintiff

throughout the time of her employment.  Id. at ¶ 50.  Additionally, plaintiff alleges that "[i]n or about 2008 and continuing until April, 2009 . . . ." she was the only employee in the mailroom over 50 years old.  Id. at ¶ 52.

Plaintiff further alleges that throughout her four years of employment, a pattern of "national origin and racial based harassment [was] directed against her . . . ."  Id. at ¶ 39. Plaintiff claims that she "was the only Asian and naturalized Chinese immigrant in the mailroom."  Id. at ¶ 12.  She contends that all of her supervisors and managers were white.  Id. at ¶ 34.  Plaintiff alleges that co-worker Jim Weir repeatedly used the term "Made in Taiwan" when referring to plaintiff "in front of [Supervisor] Frank Ginnocchio with [his] approval."  Id. at ¶ 33. Another co-worker, Chris Guinnip, allegedly called plaintiff a "Chinese coo coo" on February 9, 2007.  Id. at ¶ 35.  Plaintiff generally alleges the use of ethnically charged terms such as "Made in Taiwan," "Chi-English," and "Chinese coo coo" occurred on various occasions throughout her four years of employment.  Id. at ¶ 56.  Plaintiff alleges this pattern of discrimination was encouraged by her co-workers and immediate supervisors including Ginnocchio, John Ham, Joe Ferraro, and Barbara McCormick.  Id.

Plaintiff claims that she notified her managers "of the hostile work environment, racial name calling, as well as the method [sic] that was used against her by Jim Lawler, Chris Guinnup, and other persons in the mailroom."  Id. at ¶ 36.  On October 23, 2008, Supervisor Barbara McCormick asked plaintiff not to report the national origin, disability, and racial harassment directed at her in the mailroom to the Human Resources Department.  Id. at ¶ 37. McCormick also directed plaintiff's co-worker Guinnup "not to speak on behalf of the Plaintiff to Human Resources in verifying her complaint about an eth[n]ically hostile work environment or harassment from the management in the mailroom."  Id. at ¶ 38.  Despite the directive from

McCormick, plaintiff wrote to the Human Resources and Facilities department detailing "the national origin and racial based harassment directed against her while she was working in the mailroom over the four year period." Id. at ¶ 39. Plaintiff does not allege when she made her written complaint. Plaintiff was terminated on April 15, 2009 "for alleged behavioral problems." Id. at ¶ 40.

On June 1, 2009 plaintiff filed a Charge of Discrimination with the Delaware Department of Labor, which was cross-filed with the Equal Employment Opportunity Commission. In her Charge of Discrimination, she alleged that defendant engaged in unlawful discrimination "on the basis of failure to provide a reasonable accommodation, a racially and ethnically hostile environment, racial, age, disability, and national origin harassment, and retaliation based on the foregoing which resulted in her discharge on April 15, 2009." Id. at ¶ 8.

On August 31, 2011, the DDOL issued a No-Cause Determination and Dismissal with Corresponding Right to Sue Notice. Id. at ¶ 9. On March 26, 2012, the EEOC issued a Dismissal and Notice of Right to Sue plaintiff. Id. at ¶ 10. Plaintiff alleges that she received the right to sue letter on March 30, 2012. Id. On June 27, 2012, plaintiff, proceeding *pro se* at the time, filed her original complaint with this Court. Id. at ¶ 11. Plaintiff subsequently retained counsel and filed an Amended Complaint on April 29, 2013. On May 17, 2013, defendant moved to dismiss plaintiff's claims. Def.'s Mot. (Dkt. No. 25).

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

**DISCUSSION**

**I.      Plaintiff's Claims are Not Time-Barred**

Under Title VII of the Civil Rights Act of 1964, a claimant in a deferral state, such as Pennsylvania or Delaware, must first file a complaint with the EEOC within 180 days of the alleged unlawful employment practice.  U.S.C. § 2000e-5(e); <u>Occidental Life Ins. Co v. EEOC</u>, 432 U.S. 355, 359 (1977).  Where, as here, the claimant alleging unlawful discrimination cross filed a Charge of Discrimination with the EEOC and the Delaware Department of Labor, the limitations period is extended retroactively to 300 days of the alleged discrimination.  <u>Mandel v. M & Q Packaging Corp.</u>, 706 F.3d 157, 165 (3d Cir. 2013); <u>citing</u> 42 U.S.C. § 2000e-5(e)(1). Both the ADA and the ADEA contain provisions stipulating identical 300 day limitations periods for claims brought in deferral states. <u>42 U.S.C. § 2000e-5(e)(1)</u>; 29 U.S.C. § 626(e).

If the EEOC decides to take no action on a claimant's Charge of Discrimination, as here, the EEOC "shall notify the person aggrieved and within ninety days after giving of such notice a civil action must be brought . . . ."  42 U.S C. § 2000e-5(f)(1).  The EEOC notifies a claimant of their right to sue through the issuance of a right to sue letter.  <u>Id.</u>  "Both the 300 day period for filing the administrative complaint and the 90 day period for filing the court action are treated as statutes of limitations."  <u>Robinson v. Southeastern Pa. Transp. Auth.</u>, No. 02-2550, 2002 WL 1870462, at *3 (E.D. Pa. Aug. 14, 2002).

**A.      Plaintiff's Date of Receipt Is Controlling**

Defendant contends that "all claims set forth in the plaintiff's complaint are time-barred because the complaint was filed outside of the applicable ninety-day statute of limitations period."  Def.'s Mot. Dismiss (Dkt. No. 27) at ECF p. 6.  In support of its position, defendant argues the ninety-day limitations window to file suit commenced on March 26, 2012 and expired

on June 25, 2012.  Def.'s Mem. of Law (Dkt. No. 8-1) at ECF p. 2.  Defendant thus contends that the filing of this suit on June 27, 2012, forecloses plaintiff from seeking relief for all claims.[2]  Id. at 4.  Plaintiff argues, however, that she received the EEOC right to sue letter on March 30, 2012.  Am. Compl. (Dkt. No 23) at ¶ 10.  Counting forward ninety days from the date she received the letter is June 28, 2012, the date on which plaintiff argues the limitations window closed.  Consequently, plaintiff argues that her suit, filed on June 27, 2012, was timely filed.  Id. at ¶ 11.

As plaintiff argues, the ninety day window to file a civil action in court commences when the EEOC right to sue letter has been received.  Seitzinger v. Redding Hosp. and Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999); Mosel v. Hills Dep't Store, Inc., 789 F. 2d 251, 252 (3d Cir. 1986) (per curiam).  "When determining the date on which an EEOC letter has been received there is a presumption under the federal rules, in the absence of any evidence to the contrary, a party shall be deemed to have received a document three days after it was mailed.  Robinson, 2002 WL 1870462, at *4; citing Seitzinger, 165 F.3d 236 at 239; quoting Fed. R. Civ. P. 6(e).  If, however, the claimant adduces facts sufficient to establish the date on which they received the right to sue letter, that date controls and commences the ninety day window.  Seitzinger, 165 F.3d at 239; citing Peete v. Am. Standard Graphic, 885 F.2d 331 (6th Cir. 1989).

Plaintiff claims that although the right to sue letter was dated March 26, 2012, it was not received at plaintiff's home address until March 30 "due to the Commission's use of an incorrect address."  Am. Compl. (Dkt. No. 23) at ¶ 10.  Since plaintiff has alleged the date she received the right to sue letter at her home address, I find that, for purposes of deciding defendant's motion to

---

[2]  Under defendant's calculation, June 24, 2012 would have been the ninetieth day, but because it was a Sunday, pursuant to Federal Rule of Civil Procedure 6(a)(1)(C) the period continued to run until the end of Monday, June 25.

dismiss, it is from this date (March 30, 2012) that the ninety day limitations window commences. Plaintiff filed this action 89 days after the limitations period began and one day prior to its termination on June 28, 2012. Consequently, I find that the she has sufficiently alleged that this action was timely filed after receiving the right to sue letter.

> **B.**     **Plaintiff Has Alleged Sufficient Facts to Invoke the Continuing Violation Doctrine**

Defendant also contends plaintiff's claims are untimely because she has not alleged any unlawful act occurring no later than 300 days prior to the filing of her EEOC Charge of Discrimination. Def.'s Mot. (Dkt. No. 25) at ECF p. 5-6. Defendant claims that the last allegedly discriminatory act cited in plaintiff's amended complaint occurred 544 days before plaintiff filed her EEOC Charge. Id. at 7. Defendant argues that "for any allegation to serve as all or part of the basis for a timely discrimination claim, the alleged act had to have occurred no later than August 5, 2008, i.e. 300 days before Plaintiff filed her EEOC charge." Id. at p. 7-8.

Plaintiff does not dispute that the majority of the unlawful acts alleged in her amended complaint occurred before the 300 day limitations window. However, she does allege acts within the 300 day limitations window and argues that these events establish a pattern of discrimination that occurred throughout the four year period from 2006 until her termination in 2009. Am. Compl. at ¶ 39. Plaintiff contends that a pattern of ongoing discrimination started shortly after she began work in September 2005 which persisted beyond August 5, 2008 and into the limitations period, even though the last act of discrimination is alleged to have occurred in February 2007. Id. at ¶¶ 12-35. Plaintiff further alleges that acts of alleged discrimination that occurred within the limitations period are related both temporally and in subject manner to earlier acts of alleged discrimination, thus permitting her to aggregate her claims under the continuing violation doctrine.

The continuing violation doctrine permits a plaintiff in certain circumstances to seek relief for unlawful acts that were alleged to have taken place prior to the commencement of the 300 day limitations period.  O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006). Under this theory, an act that falls outside the applicable limitations period may be deemed timely if a plaintiff shows that (1) it is part of an "ongoing practice or pattern of discrimination" by defendant, and (2) the "last act evidencing the continuing practice falls within the limitations period."  Oliver v. Clinical Practices of Univ. of Pa., No. 10-7493, 2013 WL 420335, at *3 (E.D. Pa. Feb. 4, 2013); Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481 (3d Cir. 1997).  This doctrine allows allegedly discriminatory acts that are not actionable individually to be aggregated to make out a discrimination claim.  O'Connor, 440 F.3d at 127.  Plaintiff must establish that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination."  Jewett v. Int'l Tel. and Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981), cert. denied 454 U.S. 969.  Indeed, the relevant distinction is between the occurrence of isolated acts of discrimination and a persistent, ongoing pattern.  Id.

The Court of Appeals considers two factors in distinguishing continuing violations from isolated occurrences: (1) subject matter[3] and (2) frequency.[4]  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 166 (3d Cir. 2013).  Further, evaluation of a continuing violation argument "must concentrate not on individual incidents, but on the overall scenarios . . . ."  Andrews v. City of Phila., 895 F.2d 1469, 1484-85 (3d Cir. 1990) (holding any fact-finder cannot examine each alleged incident of discrimination "in a vacuum;" the "totality of circumstances" surrounding

---

[3] "We have defined subject matter as whether the violations constitute the same type of discrimination."  Mandel, 706 F.3d at 170.

[4] "We have defined permanence as whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." Id.

each alleged incident must be considered.) The Court of Appeals has rejected the argument that plaintiffs invoking the continuing violation doctrine must allege evidence that the discrimination involved the same actor or particular form of discrimination. West v. Phila. Elec. Co., 45 F.3d 744 (3d Cir. 1995).

In West, where the plaintiff sought to invoke a continuing violation doctrine "the [district court] required the plaintiff to stay within the 300 day period unless he could show a continuing violation by the same individual." Id. at 756. The Court rejected the "same actor" and "same form of discrimination" requirements as inconsistent with the "totality of circumstances" approach articulated in Andrews. The Court also found that only one violation within the 300 day filing period is needed to invoke the continuing violation doctrine. Id. at 755; see also Mandel, 706 F.3d at 166 (holding a plaintiff can invoke a continuing violation theory when they "have alleged at least one act that falls within the statute of limitations . . . .").

Accordingly, to survive defendant's motion to dismiss, plaintiff need not show that the alleged discrimination involved either the same actor or the same specific type of discrimination. West, 45 F.3d at 756. Plaintiff alleges age, disability and national origin based discrimination. Additionally, she alleges discriminatory acts by various actors, including fellow co-workers and her supervisors. Consistent with the "totality of circumstances" approach employed in Andrews, I find plaintiff has sufficiently alleged that the claimed discriminatory actions in this case amounted to more than isolated and sporadic acts.

Plaintiff contends that an ongoing pattern of discrimination persisted throughout the entire four years of her employment with defendant. Am. Compl. at ¶ 39. This is not a baseless claim; plaintiff has alleged specific facts to substantiate it, including the dates of alleged discrimination, the nature of the alleged discrimination and who the actors were. For example,

plaintiff alleges that on October 17, 2005, "co-worker Jim Weir yelled at the Plaintiff and cursed her and called her names. He frequently referred to Plaintiff as 'Made in Taiwan.'" Id. at ¶ 13. Another example: "[o]n February 9, 2007, while the supervisor was out of the mailroom, co-worker Chris Guinnup called the Plaintiff a 'Chinese coo coo.'" Id. at ¶ 35. Both examples are indicative of the level of specificity in plaintiff's amended complaint regarding acts of alleged discrimination. Specificity in reporting alleged discrimination is critical in distinguishing a continuous on-going pattern from isolated sporadic acts. See Oliver, 2013 WL 420335, at *5 (holding continuing violation theory did not apply because alleged discriminatory acts were "somewhat vague," and the plaintiff "provide[d] no specific dates for [the defendant's] alleged discriminatory actions. She merely contend[ed] that 'there were many instances of disparate treatment.'")

Despite defendant's argument to the contrary, plaintiff has alleged acts of discrimination within the limitations window directly related temporally and in subject matter to alleged prior acts of discrimination. Plaintiff alleges that she sought to report prior alleged acts of discrimination to the proper authorities including prior acts of alleged discrimination occurring all the way back to when she began employment. Am. Compl. at ¶ 39. She claims, however, that on October 23, 2008, within the limitations period, "Supervisor Barbara McCormick asked [plaintiff] not to report the national origin, disability, and racial discrimination directed at her in the mailroom to the Human Resources Department . . . ." Id. at ¶ 37. As such, this directive not to report prior acts of alleged discrimination is related both in subject matter and temporal scope to alleged prior acts of discrimination. In regards to subject matter, the report contained details about the various types of discrimination levied against plaintiff. In regards to temporal scope, this letter was closely related in temporal scope to the alleged acts of discrimination outside the

limitations window.  This alleged act is sufficient to establish a claim for a pattern of on-going discrimination, thus allowing plaintiff to invoke the continuing violation doctrine.

Defendant argues that the temporal distance between the alleged acts of discrimination inside and outside the limitations window "precludes the application of the continuing violation doctrine and renders claims based on old allegations untimely."  Def.'s Mem. (Dkt. No. 27) ECF p. 3.  However, the Court of Appeals "has not 'set a specific standard for determining how close together the acts must occur to amount to a continuing violation.'"  Oliver, 2013 WL 420335, at *5; quoting Cowell v. Palmer Tp., 263 F.3d 286, 295 (3d Cir. 2001).  Additionally, the acts of discrimination alleged in plaintiff's complaint are all within close temporal proximity to each other.  Furthermore, defendant argues that even if some allegedly discriminatory acts occurred within the 300 day limitations window, those acts that occurred outside the limitations window must be severed and excluded from consideration on the merits.  Def.'s Mem. (Dkt. No. 27) at 4. This argument contradicts the core provision of the continuing violation doctrine which allows plaintiffs to aggregate claims that occur outside the 300 day limitations window if they are linked to an ongoing pattern of discrimination that extends into the limitations window.  O'Connor, 440 F.3d at 127.

Because I find that plaintiff's allegations create an inference that the discriminatory conduct alleged by the plaintiff is more than the occurrence of isolated or sporadic acts of discrimination, I find they are sufficient to allow her to invoke the continuing violation doctrine so that her claims can withstand defendant's motion to dismiss on statute of limitations grounds.

Since I find that plaintiff's claims cannot be dismissed as untimely, I will determine whether the plaintiff's (1) ADA discrimination claim, (2) ADA retaliation claim, and (3) ADEA discrimination allegations state a claim for relief.

## II.     Plaintiff Has Not Alleged Facts Sufficient to Pursue an ADA Discrimination Claim

The ADA mandates that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual . . . ."  42 U.S.C. § 12112(a).  Plaintiff argues that by "deliberately ignor[ing] the Plaintiff's request for [a] physical listing of accommodation in accordance with the doctor's notes, " and thereby causing plaintiff's wrist injury to become a permanent, disabling condition, defendant has violated the ADA.  Am. Compl. at ¶¶ 43, 44.  Defendant argues plaintiff's ADA discrimination claims should be dismissed because plaintiff has not alleged facts sufficient to set forth the requisite prima facie case of discrimination under the ADA.

To establish a prima facie case of ADA discrimination, a plaintiff must show "(1) they are a disabled person within the meaning of the ADA; (2) they are otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) they have suffered an otherwise adverse employment decision as a result of discrimination."  Gaul v. Lucent Tech., 134 F.3d 576. 580 (3d Cir. 1998); citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).  Plaintiff must establish all three elements.

### A.  First Element: Plaintiff Does Not Sufficiently Allege That She Is "Disabled."

To satisfy the first element of her prima facie case of ADA discrimination, plaintiff must demonstrate that she is 'disabled' which is defined as having "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C § 12102(2).

### 1.  Plaintiff Does Not Sufficiently Allege That Her Impairment is a Permanent Disability That Effects One or More Major Life Activities.

Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2). To determine whether an impairment substantially limits a major life activity, the ADA's implementing regulations set forth several factors to consider including: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(i).

The EEOC "Interpretive Guidance," further provides when determining whether an individual is restricted in the major life activity of working, "the term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Thus, the emphasis is upon whether or not the plaintiff is significantly restricted in performing "*either* a class of jobs *or* a broad range of jobs." Id.; see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 493 (1999) ("[t]o be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice").

Covered entities can establish a defense to a charge of discrimination by demonstrating "that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor." 29 C.F.R. § 1630.15(f). "For the purposes of this section 'transitory' is defined as lasting or expecting to last six months or less." Id. The Court of Appeals has interpreted this provision of the EEOC guidelines to mean that "transient, nonpermanent conditions," McDonald v. Commonw., 62 F.3d 92, 94-97 (3d Cir. 1995) or "a temporary, non-chronic impairment of short duration," Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir. 2002), fall short of substantially limiting an individual in a major life activity.

Plaintiff has not alleged sufficient facts to plausibly claim that her wrist injury is a permanent physical disability. The Court of Appeals has determined that "temporary lifting restrictions, which were removed only four months after first imposed, are the very definition of such a non-chronic impairment." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012). The restriction on plaintiff's ability to lift more than 20 pounds was confined to only one month. Am. Compl. at ¶ 22. This restriction was not permanent and certainly was not for such an extended time as to be the type contemplated by the drafters of the ADA. Plaintiff claims that defendant's "failure to accommodate her lifting restrictions . . . exacerbated her injury . . . ." Id. at ¶ 44. Yet, her last specific mention of the pain resulting from this injury was in August 2006, two months after the actual occurrence of the injury. Id. at ¶ 26. Plaintiff worked nearly three more years in the mailroom before being terminated in April 2009.

Thus, I find that plaintiff has not alleged facts sufficient to create an inference that her wrist injury is a 'disability' as defined by the ADA.

### 2. Plaintiff Does Not Allege a "Record Of" Her Impairment.

A plaintiff may also satisfy the first element of a prima facie case of ADA discrimination by establishing "a record of" a disability. A plaintiff establishes "a record of a disability if the individual has a history of, or has been misclassified as having a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). Plaintiff does not contend in her amended complaint or in her response to defendant's motion to dismiss that her claim is based on a record of an impairment.

### 3. Plaintiff Does Not Allege That She Was "Regarded As" Disabled.

The final way for a plaintiff to satisfy the first element of a prima facie case of ADA discrimination is by demonstrating that the plaintiff was "regarded as" having a disability. A

plaintiff is "regarded as" having a disability if "(1) [plaintiff] has a physical or mental impairment that does not substantially limit major life activities, but if treated by the covered entity as constituting such limitations, (2) [plaintiff] has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such an impairment, or (3) [plaintiff] has [no such] impairment but it treated by a covered entity as having a substantially limiting impairment." Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 188 (3d Cir. 1999); quoting 29 C.F.R. Section 1630.2(1).

Plaintiff has not alleged sufficient facts to create a plausible claim that defendant "regarded her" as disabled. In her response to defendant's motion, plaintiff asserts that "the fact that AIG supervisor Mr. Ginnocchio referred Trelenberg to the disability carrier is a factual allegation of paragraph 25 which should indicate that AIG believed that she was disabled." Pl's. Mem. (Dkt. No. 26) at ECF p. 7. I find this argument unconvincing.

Despite referring plaintiff to defendant's disability carrier, plaintiff's supervisors "made no effort to either report the injury to Human Resources or file an injury report." Am. Compl. at ¶ 25. Indeed, plaintiff herself admits that her claims to the disability carrier failed because "she did not qualify for a disability." Id. at ¶ 45. Plaintiff's supervisors took no action in response to the doctor's letter requesting workplace accommodations for her lifting restrictions. Id. at ¶ 23. Moreover, her Amended Complaint is rife with alleged instances of her supervisors instructing her co-workers not to respond to her requests for assistance in lifting. Id. at ¶¶ 16, 26, 28. Accordingly, I find that the plaintiff has failed to allege facts sufficient to establish that defendant regarded her as disabled.

Since plaintiff has not alleged sufficient facts to establish the first element of a prima facie case of disability discrimination, I will dismiss Count I of her amended complaint.

**III.     Plaintiff Has Alleged Sufficient Facts to Establish an ADA Retaliation Claim.**

The ADA provides: "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual had made a charge . . . under [the ADA]."  42 U.S.C. § 12203(a).  "It shall be unlawful to coerce, intimidate, threaten, or interfere with an individual in the exercise or enjoyment . . . of any right granted or protected by [the ADA]."  42 U.S.C. § 12203(b); see also Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003).  If an individual cannot allege sufficient facts to pursue an ADA discrimination claim, this does not foreclose the plaintiff from pursuing a retaliation claim under the ADA.  Krouse v. Am. Sterilizer Co., 126 F.3d 494. 502 (3d Cir. 1997).  Although the alleged discrimination need not rise to the level of actual discrimination in violation of the ADA, "the employee must hold an objectively reasonable belief, in good faith, that the activity he oppose[s] is unlawful."  Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006), see also Soileau v. Guilford of Me. Inc., 105 F.3d 12, 16 (1st Cir. 1997) (holding that plaintiff may assert an ADA retaliation claim despite the failure of the underlying disability claim.)

As with her ADA discrimination claim, plaintiff bears the burden of establishing a prima facie case.  Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009); cf. Keller v. Orix Credit Alliance, Inc. 130 F.3d 1101, 1108 (3d Cir. 1997) (applying the burden shifting framework of McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973) to ADEA claims).  However, because the elements of a prima facie case are an evidentiary and not a pleading requirement, plaintiff need not prove all elements of her prima facie case in order to survive defendant's motion to dismiss.  Swierkiewicz v. Sorema, 534 U.S. 506, 515 (2002); Gavura v. Pa. State House of Reps., No. 00-1279, 2002 WL 31781092, at *3 (3d Cir. 2002).  To establish a

prima facie case with respect to her ADA retaliation claim. She must show: "(1) protected

employee activity; (2) adverse action by the employer either after or contemporaneous with [her]

protected activity; and (3) a causal connection between [her] protected activity and the

employer's adverse action." Fogleman v. Mercy Hosp. Inc., 283 F.3d 561, 567-68 (3d Cir.

2002); quoting Krouse, 126 F.3d at 500. "Formal EEOC complaints as well as informal

complaints to management may qualify as protected activity for purposes of a retaliation claim."

Mellor v. Atkinson Freight Lines Corp. of Pa., No. 11-5468, 2012 WL 1231845, at *4 (E.D. Pa.

April 12, 2012) citing Curay-Cramer v. Ursuline Acad. Of Wilmington, Del. Inc., 450 F.3d 130,

135 (3d Cir. 2006).

### A. Plaintiff Has Sufficiently Alleged That She Believed the Behavior She Opposed Was a "Protected Activity."

Plaintiff has alleged sufficient facts to establish that she had an objectively reasonable

belief, in good faith, that the activity she opposed was unlawful under the ADA. The facts

alleged in her amended complaint create an inference that she believed defendant's failure to

accommodate her injury violated the ADA. Am. Compl. at ¶¶ 43, 46. The ADA mandates that

covered entities provide reasonable accommodations to employees who qualify for ADA

protection. 42 U.S.C. § 12112(a). Plaintiff alleges repeated attempts to secure accommodations

from her employer for her doctor-imposed lifting restrictions. Am. Compl. at ¶¶ 22, 23, 25.

These requests were denied each time. Id. at ¶¶ 23, 25. Plaintiff alleges "the managers and

supervisors of the mailroom at AIG deliberately ignored [her] request for physical listing of

accommodations in accordance with the doctor's notes." Id. at ¶ 43. Plaintiff has also alleged

sufficient facts to claim that she possessed a reasonable, good faith belief that her supervisor's

failure to file an injury report or report the injury to Human Resources violated the ADA. Id. at ¶

46. And finally, plaintiff's letter to "Terri Clark in Human Resources as well Scott Kleiss in

Facilities" outlining the allegedly unlawful activity, in conjunction with McCormick's directive to plaintiff not to write the letter, are sufficient to allege a claim that plaintiff, in good faith, believed the activity she reported to Human Resources was unlawful.  Id. at ¶ 48.  The Court of Appeals has held "complaints to management may qualify as protected activity for purposes of a retaliation claim."  Curay-Cramer, 450 F.3d at 135; see see Hodor v. St. Luke's Hosp. & Health Network, No. 11-cv-04657, 2012 WL 4511325, at *7 (E.D. Pa. Sept. 28, 2012) (holding plaintiff "sufficiently alleged that he engaged in protected activity" after sending a letter to Human Resources detailing alleged discriminatory conduct by his supervisors.)  Plaintiff's written complaint to Clark and Kleiss, in conjunction with her repeated requests for reasonable accommodations are sufficient allegations that she engaged in activity protected under the ADA.

### B. Plaintiff Has Sufficiently Alleged That Her Termination Is An Adverse Employment Action

With respect to the second element required to establish a prima facie case of ADA retaliation, "termination from employment after engaging in ADA-protected behavior is sufficient to satisfy the adverse employment action element for an ADA retaliation claim." Shellenberger, 318 F.3d at 183; see Hodor, 2012 WL 4511325, at *7 (holding "the adverse employment element for plaintiff's ADA retaliation claim [was] satisfied" after the defendant terminated the plaintiff for writing a letter to Human Resources detailing allegedly discriminatory conduct by the plaintiff's supervisor).

Here, plaintiff was terminated on April 15, 2009.  Am. Compl. at ¶ 8.  She claims that defendant terminated her for "reporting her injury and condition to the Human Resources Department," an ADA-protected activity.  Id. at ¶ 48.  Because termination in response to plaintiff's having engaged in an ADA protected activity is sufficient to satisfy the adverse

employment action element for her ADA retaliation claim, I find plaintiff has sufficiently alleged that she suffered an adverse employment action.

### C. Plaintiff Has Sufficiently Alleged a Casual Connection Between Her Reporting the Alleged Discrimination to HR and Her Eventual Termination.

Plaintiff must also establish a causal relationship between her ADA-protected behavior and defendant's adverse action against her. To establish causation, a plaintiff must show either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory activity; (2) a pattern of antagonism coupled with timing; or (3) an inference of causation from the "evidence gleaned from the record as a whole." Griesbaum v. Aventis Pharm., 259 F. App'x 459, 466-467 (3d Cir. 2007); citing Lauren W. ex rel Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

An analysis of causation mandates an inquiry into the motives of an employer and therefore is context-specific. Kachmar v. SunGuard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997). The absence of immediacy between the protected activity and the adverse action does not disprove causation. Id. Indeed, the Court of Appeals has rejected any bright-line rule specifying how much time can pass between protected activity and the alleged retaliatory act. Morrin v. Torresdale Frankford Country Club, No. 07-5527, 2008 WL 2389469, at *7 (E.D. Pa. June 11, 2008). Instead, the Court of Appeals has opted for a "fact-based" approach and has "ruled differently on this issue . . . depending, of course, on how proximate the events actually were . . . ." Farrel, 206 F.3d at 279. Courts have generally found unusually suggestive temporal proximity only where the adverse employment action occurred contemporaneously with or immediately after the protected activity. Compare Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 369 (3d Cir. 2008) (finding that a three-day gap is unusually suggestive); and Schatzman v. Martin

Newark Dealership, Inc., 158 F. Supp. 2d 392, 404 (D. Del. 2001) (finding that a one-month gap is unusually suggestive); with Williams, 380 F.3d 761 (finding that two months was not unusually suggestive).

Plaintiff alleges that on October 23, 2008 McCormick "asked her not to report the [alleged discrimination] directed at her in the mailroom to the Human Resources Department . . . ." Am. Compl. at ¶ 37. McCormick "also called [plaintiff's] co-worker Chris Guinnup and told him not to speak on behalf of the Plaintiff to Human Resources in verifying her complaint about an ethically [sic] hostile work environment or harassment from the management in the mailroom." Id. at ¶ 38. In direct opposition to McCormick's statement, plaintiff informed Human Resources of the alleged incidents of discrimination in 2009 prior to her April 15 termination. Id. at ¶ 39. Plaintiff was terminated nearly five months after she engaged in the alleged protected activity. This time period, examined alone, is insufficient to infer causation because it is not unusually suggestive.

However, absent an unusually suggestive temporal proximity plaintiff may rely on "timing plus other evidence" from which causation can be inferred. Farrell, 206 F.3d at 281; see also Fasold v. Justice, 409 F.3d 178, 189-90 (3d Cir. 2005) (holding that in the absence of unusually suggestive temporal proximity, "[temporal] proximity is considered together with the fact that plaintiff's employer had questioned plaintiff about his pending age discrimination claim," in order to infer causation.). Here, the timing of plaintiff's termination in conjunction with her other allegations is sufficient to claim that she was terminated for engaging in a protected activity. The timing of plaintiff's termination plus her other circumstantial allegations, such as McCormick's directives to both plaintiff and Guinnup, "gleaned from the record as a whole," are sufficient for a trier of fact to plausibly infer causation between plaintiff's complaint

to management and her termination thereafter. Griesbaum, 259 F. App'x at 467; see also Hodor, 2012 WL 4511325, at *8 ("[D]rawing all reasonable inferences in favor of plaintiff, the temporal proximity of plaintiff's protected activity and termination, coupled with plaintiff's other allegations, are adequate to infer causation.").

Since the plaintiff has alleged sufficient facts to establish all three elements of a prima facie case of ADA retaliation, I will deny defendant's motion to dismiss her ADA retaliation claim.

## IV. Plaintiff Has Not Alleged Sufficient Facts to Establish a Facially Plausible Claim of ADEA Discrimination.

Defendant contends that plaintiff's ADEA claims should be dismissed because she "generally makes no factual allegation that could support an inference that she was fired or otherwise mistreated because of her age . . . ." Def.'s Mot. at ECF p. 11. Plaintiff offers three specific allegations in support of her ADEA discrimination claim: (1) Plaintiff's co-workers used derogatory language specifically referring to her age; (2) her supervisors ignored an October 2008 incident when a 37-year old co-worker slammed a mailroom cart into her leg; and (3) from about 2008 continuing until her termination plaintiff was the only employee in the mailroom over 50 years old. Am. Compl. (Dkt. No. 23) ECF at ¶¶ 50-54.

The ADEA provides that is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623 (a). A plaintiff attempting to establish direct evidence of discrimination "faces a high hurdle." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998) (holding "[t]he direct evidence must be so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production."). I find that

plaintiff's allegations are not sufficient to establish direct evidence of age discrimination.  Thus, I

will analyze her claims under the burden shifting analysis articulated in <u>McDonnell Douglas</u>, 411

U.S. 792 (1973) and <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981) for cases

involving indirect evidence.  <u>See</u> <u>Simpson v. Kay Jewelers</u>, 142 F.3d 639 (3d Cir. 1998)

(applying the burden shifting analysis articulated in <u>McDonnell Douglas</u> to age discrimination

cases).

At the motion to dismiss stage, plaintiff need not prove her prima facie case beyond a

preponderance of the evidence, but she is required to establish "a facially plausible claim."

<u>Mikulski v. Bucks Cnty. Cmty. Coll.</u>, No. 11-557, 2011 WL 1584081, at *4 (E.D. Pa. Apr. 27,

2011).  To establish a prima facie case of age discrimination, plaintiff must show she "(1) was a

member of the protected class, <i>i.e.</i>, was over 40, (2) was qualified for the position, (3) suffered

an adverse employment decision, and (4) ultimately was replaced by a person sufficiently

younger to infer an inference of age discrimination."  <u>Palazzolo v. Damsker</u>, No. 10-CV-7430,

2011 WL 2601536, at *8 (E.D. Pa. June 30, 2011) <u>citing</u> <u>Monaco v. Am. Gen. Assurance Co.</u>,

359 F.3d 269, 300 (3d Cir. 2004).

Here, plaintiff has not alleged her exact age, but does allege from "about 2008 and

continuing until April 2009" she was the only employee in defendant's mailroom over the age of

50.  Am. Compl. (Dkt. No. 23) ECF ¶ 52.  Additionally, she alleges that defendant hired her in

2005.  <u>Id.</u> at ¶ 12.  Thus, I find that she was over the age of 40, and a member of that protected

class, for the duration of her employment with defendant.  Plaintiff is also silent on whether or

not she was qualified for the mailroom clerk position.  Yet, she was hired as a mailroom clerk

and was employed in that capacity for nearly four years through April 2009.  <u>Id.</u> at ¶¶ 12, 40.

Plaintiff has alleged sufficient facts to allow me to infer she was qualified for the clerk position.

Plaintiff also alleges she was terminated by defendant in April 2009, and thus has alleged sufficient facts to allow me to infer she suffered an adverse employment action. <u>Id.</u> at ¶ 8.

Plaintiff contends that she has met the requisite pleading standards because she was harassed and eventually terminated on account of her age. <u>Id.</u> at ¶ 53. However, this conclusory allegation is simply insufficient to state a claim under standard set forth in <u>Twombly</u>. Indeed, it is no longer enough "to allege mere elements of a cause of action, instead 'a complaint must allege facts suggestive of [the proscribed] conduct'" <u>Phillips</u>, 505 F.3d at 233; <u>quoting Twombly</u>, 550 U.S. at 561-62. Here, plaintiff alleges no facts that give rise to anything more than pure speculation that she was terminated on account of her age. Plaintiff has not alleged that following her termination she was replaced with a younger employee such that I can infer age based discrimination. <u>See</u> <u>Palazzolo</u>, 2011 WL 2601536, at *8 (holding that the absence of an allegation in plaintiff's complaint that she was replaced by a younger employee is "not sufficient to satisfy the <u>Iqbal</u> test and thus" plaintiff's ADEA claim must be dismissed); <u>Pina v. Henkel Corp.</u>, No. 07-4048, 2008 WL 819901, at *4 (holding plaintiff "has failed to state a claim for age discrimination under the ADEA" because [plaintiff] has not alleged he was replaced by a younger employee.)

Plaintiff alleges that an October 2008 incident involving a younger co-worker along with a comment from her supervisor that plaintiff "must be having hot flashes" somehow supports the conclusion that she was terminated on the basis of her age. Am. Compl. (Dkt. No. 23) at ¶¶ 51, 29. In order to survive defendant's motion to dismiss, plaintiff has the burden of alleging "more than labels and conclusions." <u>Twombly</u>, 550 U.S. at 555. Plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level . . . ." <u>Id.</u>

Plaintiff provides nothing beyond mere speculation that the October 2008 incident in which 36 year old Lawler "slammed a mailroom cart into [plaintiff's] leg" contributed to her termination based on age. Am. Compl. at ¶ 51. Plaintiff does not allege that Lawler target her on the basis of her age, nor does she allege any facts that suggest that this incident in October 2008 contributed to her termination nearly six months later. Indeed, by plaintiff's own admission, her termination was retaliation "for reporting her injury and condition to the Human Resources Department" and unrelated to her age. Id. at ¶ 48.

Additionally, plaintiff's allegation that Supervisor Ginnocchio told her "she must be having hot flashes" is a factual allegation that creates nothing more than mere speculation that she was terminated based on her age. Id. at ¶ 29; Pina, 2008 WL 819901, at *4 (holding plaintiff's ADEA claim cannot survive a motion to dismiss because "there are simply no facts alleged in the Complaint that give rise to anything more than pure speculation that Plaintiff was fired on account of his age."). Plaintiff asserts that Ginnocchio's "hot flashes" comment came in response to her complaining "about the temperatures reaching 80 degrees in the mailroom . . . ." Am. Compl. (Dkt. No. 23) at ¶ 29. Plaintiff alleges this single incident occurred in November 2006, nearly two and a half years before her termination. Id. Additionally, although plaintiff alleges the term "Chinese cougar" was used "when speaking to and about [plaintiff] during her employment in the mailroom," she does not allege any specific dates when that term was used, and is silent on who said that term and in what context. Id. at ¶ 50.

Plaintiff's conclusory allegations that she was terminated on the basis of her age cannot survive defendant's motion to dismiss because they do not raise a right to relief beyond the speculative level. Accordingly, I will grant defendant's motion to dismiss plaintiff's ADEA claim.

**CONCLUSION**

For the aforementioned reasons, defendant's motion to dismiss will be granted in part and denied in part.  I will dismiss Counts I, and III of plaintiff's amended complaint with leave to amend to the extent that she is able to allege sufficient facts to support the dismissed claims.  <u>See Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004); <u>Phillips</u>, 515 F.3d at 245 ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such as amendment would be inequitable or futile.").  I will deny defendant's motion to dismiss Count IV on statute of limitations grounds.

An appropriate Order follows.