THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHIEN HWA KATHERINE TRELENBERG | : : : | CIVIL ACTION NO. 12-3603 |
| v. | : : : | |
| 21ST CENTURY INSURANCE AND FINANCIAL SERVICES, INC. | : | |

O'NEILL, J.                                                                                   April 24, 2014

## MEMORANDUM

Plaintiff Shien Hwa Katherine Trelenberg has sued her former employer, 21st Century

Insurance and Financial Services, Inc.,[1] alleging disability based discrimination and retaliation in

violation of the Americans with Disabilities Act and hostile work environment in violation of

Title VII of the Civil Rights Act of 1964.  Presently before me is defendant's motion to dismiss

Counts I and II of plaintiff's second amended complaint and plaintiff's response thereto.[2]  For

the following reasons I will grant defendant's motion.

## BACKGROUND

Trelenberg was employed by 21st Century as a mail clerk at its Wilmington, Delaware

location from September 12, 2005 until she was fired on April 15, 2009 allegedly for disruptive

behavior.  Dkt. No. 30 at ¶¶ 12, 40.  Trelenberg claims that she was actually fired in violation of

the ADA because she suffered a wrist injury while at work that required her to ask for help with

lifting and for time off to recuperate.  Id. at ¶ 54.  Additionally, Trelenberg claims that her

---

[1]     During the period of Trelenberg's employment defendant was known as AIG Marketing Inc.  Dkt. No. 8-1 at 1.

[2]     Defendant has not moved to dismiss Count III of plaintiff's complaint alleging a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

supervisors, Frank Ginnocchio, John Ham, Joseph Ferraro and Barbara McCormick, fired her in retaliation for reporting her injury and wrist condition to the Human Resources Department.  Id. at ¶ 56.

Trelenberg alleges that she injured her wrist on June 28, 2006 while lifting 70 lbs. of copy paper and that this injury turned into chronic tendonitis requiring her to wear a wrist splint and to restrict lifting to 20 lbs. or less.  Dkt. No. 30 at ¶¶ 42, 44.  On July 11, 2006 Trelenberg gave her supervisor Frank Ginnocchio a doctor's note stating that she could not lift more than 20 pounds for one month.  Id. at ¶ 22.  Trelenberg alleges that rather than accommodating the doctor-prescribed lifting restriction Ginnocchio "advised [Trelenberg's] co-workers not to help her lift packages."  Id. at ¶ 23.  Trelenberg also claims that on July 17, 2006 she took a twenty minute break because of pain in her wrist, which caused Ginnocchio to "use[ ] curse words" while speaking to Trelenberg and to complain about her failure to sort mail.  Id. at ¶ 24.  On July 20, 2006 Trelenberg gave Ginnocchio another letter from her doctor which described the lifting restriction and stated that she needed six days off of work in order to recuperate; however, Ginnocchio neither reported Trelenberg's injury to Human Resources nor filed an injury report.  Id. at ¶ 25.  Trelenberg states that Ginnocchio instructed her to notify the disability carrier.  Id.  Trelenberg also asserts that on August 11, 2006 she learned that Ginnocchio had instructed a co-worker not to help Trelenberg lift packages and that "he should yell at her."  Id. at ¶ 28.

Trelenberg states that on August 28, 2007 her doctor wrote another note detailing the diagnosis and lifting restriction which she provided to Ginnocchio.  Id. at ¶ 42.  Trelenberg contends that two days later the human resources manager and her mailroom supervisors met with Trelenberg to discuss "Ginocchio's concern that Trelenberg's wrist injury and consequent lifting restrictions were continuing."  Id. at ¶ 43.  On September 6, 2007 another doctor examined

Treleberg and concluded that the tendonitis in her wrist had become a chronic condition and the lifting restrictions should remain in place but that she was "otherwise able to perform the essential functions of the job." Id. at ¶ 44. Trelenberg filled out a workers' compensation form but claims that it was never processed. Id. at ¶ 45. She asserts that her repeated attempts to follow up on this claim for workers' compensation, coupled with the ongoing lifting restrictions and her repeated requests for time off from work, caused her termination. Id. at ¶ 54. She also claims that her mailroom job required her to deliver 50 to 70 pound boxes and defendant's refusal to give her paid time off caused her to use "several months of vacation time between 2007 and 2009 due to pain in her wrist from lifting at work." Id. at ¶ 52. Additionally, Trelenberg asserts that defendant "deliberately ignored" her requests for accommodation and claims that as a result of the failure to accommodate her lifting restrictions her injury was exacerbated. Id. at ¶¶ 47-48. Finally, Trelenberg claims that because her supervisors were "embarrassed by their failure to process [her] workers['] compensation claim in a timely fashion" and "after failing to convince her not to report that failure to human resources" they retaliated against her by firing her. Id. at ¶ 56.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the

assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. Second, a
> District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

The ADA prohibits covered employers from discriminating against qualified individuals on the basis of disability and from retaliating against or interfering with any person who makes a

claim pursuant to the ADA.  42 U.S.C. §§ 12112(a); 12203(a)-(b).[3]  Trelenberg has alleged both

discrimination and retaliation on the part of defendant.  Dkt. No. 30 at ¶¶ 41-54; 55-56.

Defendant seeks dismissal of both claims.  Dkt. No. 32 at 3.  I will address each claim in turn.

**I.      ADA Discrimination Claim**

To establish a prima facie case of discrimination under the ADA Trelenberg must

demonstrate that she is a qualified individual with a disability.  See e.g., Larkin v. Methacton

Sch. Dist., 773 F. Supp. 2d 508, 522 (E.D. Pa. 2011).  She must also demonstrate that she "has

suffered an adverse employment action because of that disability."  Deane v. Pocono Med. Ctr.,

142 F.3d 138, 142 (3d Cir. 1998).  Defendant asserts that Trelenberg was not disabled within the

meaning of the ADA and therefore suffered no adverse employment action, including no

reasonable accommodation, because of her injury.  Dkt. No. 32 at 10.  I agree and will grant

defendant's motion to dismiss this claim for the following reasons.

**A.      Disability**

Trelenberg claims that her wrist injury and subsequent tendonitis constitute a disability

because "she suffered continuing pain, had to wear a wrist splint continuously in order to limit

the pain that she felt in her wrist . . ."  Dkt. No. 35 at 6.  She further alleges that her injury

substantially limited her in the major life activities of lifting and working.  Dkt. No. 30 at ¶¶ 42,

44.

Trelenberg may establish that her claimed conditions constitute a disability in three ways:

---

[3]      In her response to defendant's motion to dismiss Trelenberg seeks application of the
ADA Amendments Act of 2008 to her claims which, among other things, makes it easier for a
plaintiff bringing a claim pursuant to the ADA to establish that she has a disability.  Dkt. No. 35
at 5-6.  However, the Court of Appeals has determined that the ADAAA is not retroactive.
Britting v. Sec'y, Dep't of Veterans Affairs, 409 Fed. App'x 566, 569 (3d Cir. 2011).  Therefore,
because the alleged misconduct that Trelenberg asserts caused her termination occurred prior to
January 1, 2009 the more demanding pre-ADAAA standard will apply to Trelenberg's claims.

by demonstrating that "she has a mental or physical impairment that substantially limits a major life activity, [that she] has a record of such an impairment, or [that she] is regarded as having such an impairment." Hodson v. Alpine Manor, Inc., 512 F. Supp. 2d 373, 389 (W.D. Pa. 2007). "Merely having an impairment does not make one disabled for purposes of the ADA." Toyota Motor Mfg., Ky., Inc.. v. Williams, 534 U.S. 184, 195 (2002).

Trelenberg contends that she is actually disabled. Dkt. No. 35 at 6. In order to demonstrate that she is substantially limited in her ability to work Trelenberg must demonstrate that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Olson v. Gen. Elec. Astrospace, 101 F. 3d 947, 952 (3d Cir. 1996). Importantly, "the inability to perform a single, particular job does not constitute a substantial limitation in the major activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

The EEOC's interpretive guidelines describe a two-step analysis for determining whether an individual is substantially limited in a major life activity. Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 783 (3d Cir. 1998). First, I must determine whether Trelenberg was substantially limited in any major life activity other than working, in this case lifting. If not, then I must determine whether Trelenberg was substantially limited in the major life activity of working. Id. at 783. Trelenberg contends that she had a chronic condition resulting in a lifting restriction of 20 pounds. She does not plead any facts to show that either the condition or the restriction is substantial under the ADA. Rather, Trelenberg's second amended complaint demonstrates that with her wrist brace she was "otherwise able to perform the essential functions of the job." Dkt. No. 30 at ¶ 44

Neither has Trelenberg sufficiently alleged substantial impairment in her ability to work.

Trelenberg claims that she was unable to lift more than 20 pounds and that her mailroom job required her to lift 50 pound boxes of copy paper; however, she has not alleged that her claimed inability to lift and deliver copy paper significantly restricted her ability to perform a class or broad range of jobs.  Instead, Trelenberg claims that her wrist injury prevented her from performing only one facet of her job with defendant, namely, lifting boxes of copy paper. Significantly, as alleged in the amended complaint she remained full time at her job for nearly three years without any indication that defendant was dissatisfied with her ability to perform the physical job requirements.  Trelenberg has not claimed that her alleged disability precludes her from a broad class of jobs, and because Trelenberg concedes that she was not precluded from performing her job in the mailroom, I find that she was not substantially limited in the major life activity of working.

Trelenberg also contends that she has established a record of a disability because she provided defendant with doctor's notes detailing her condition and lifting restriction.  Dkt. No. 35 at 7.  Trelenberg cites to McGinley v. City of Allentown, No. 12-645, 2012 U.S. Dist. LEXIS 188387 (E.D. Pa. 2012), in support of her assertion that documentation of a lifting restriction establishes a disability under the ADA.  Dkt. No. 35 at 6.   However, in McGinley, the plaintiff alleged that the doctor's notes he presented to his employer were evidence that his employer regarded him as disabled.  McGinley, 2012 U.S. Dist. LEXIS 188387 at *7.  Trelenberg's analogy to this case is inapposite because Trelenberg does not assert that defendant regarded her as disabled, but rather that she was actually disabled.  This case is further distinguishable on its facts because in addition to the doctor's notes McGinley provided his employer, the employer was also aware of six surgeries and physical therapy McGinley underwent because of his injury. Again recognizing that Trelenberg's doctor's note states that with the wrist brace she is able to

perform the essential functions of her job, I find that Trelenberg has not alleged sufficient facts

to support her allegation that she was disabled under the ADA.

### B.       Causation

Even if Trelenberg's wrist injury did rise to the level of a disability I find that she has not

sufficiently alleged that it was the cause of her termination from employment.  Deane, 142 F.3d

at 142.  Trelenberg concedes that on September 6, 2008 her doctor concluded that she had to

"wear a wrist splint while at work" but considered her "otherwise able to perform the essential

functions of the job."  Dkt. No. 30 at ¶ 44.  Additionally, plaintiff continued working for

defendant for more than two years thereafter and makes no allegations that she was ever

disciplined for failure or inability to lift or perform the physical aspects of her job.  Rather, the

facts that Trelenberg pleads in order to demonstrate that she was fired due to her disability

actually suggest that if defendant had any discriminatory motive in firing her, it was based on her

race or national origin.  See e.g., Dkt. No. 30 at ¶¶ 29, 32-36.  For these reasons I find that

Trelenberg has failed to allege facts sufficient to demonstrate that defendant fired her because of

her alleged disability

### C.       Leave to Amend

Though leave to amend should be "freely given when justice so requires," I find that

amendment would be futile because there is no reason to believe that plaintiff can amend her

complaint to show that she was disabled under the ADA.  Fed. R. Civ. P. 15(a)(2).  Trelenberg

argues for the first time in her response to defendant's second motion to dismiss that defendant

refused to reasonably accommodate her injury or engage with her in the interactive process.

Though I need not consider these allegations as they are not contained in her second amended

complaint, I will address them here to the extent that they pertain to the futility of allowing

Trelenberg to amend her complaint again.

Even if Trelenberg were to plead sufficient facts to assert that defendant discriminated

against her by failing to provide a reasonable accommodation for her wrist injury I find that

amendment is futile because there is no obligation to provide a reasonable accommodation

unless plaintiff has a disability as defined under the ADA.  Larkin, 773 F. Supp. 2d at 530.

"Failure to engage in the interactive process, itself, does not constitute a violation of the ADA."

Hohinder v. United Parcel Serv. Inc., 574 F.3d 169, 194 (3d Cir. 2009).

There is no reason to believe that given a third opportunity to amend her complaint that

Trelenberg would be able to plead sufficient facts to demonstrate that she was disabled under the

ADA or that her employment was terminated because of her wrist injury.  Neither can

Trelenberg demonstrate that defendant improperly denied her a reasonable accommodation.

Recognizing that plaintiff has already had two opportunities to cure deficiencies in her

complaint, I will grant defendant's motion to dismiss Count I of Trelenberg's complaint.

## II.     ADA Retaliation Claim

Trelenberg asserts she was terminated in retaliation for reporting her injury.  Dkt. No. 30

at ¶ 56.  To establish a prima facie case of retaliation under the ADA Trelenberg must show (1)

that she engaged in a protected employee activity; (2) that she was subject to adverse action by

her employer after, or contemporaneous with, the protected activity; (3) a causal connection

between the protected activity and the adverse action.  Fogleman v. Mercy Hosp., Inc., 283 F.3d

561, 567-68 (3d Cir. 2002).  In its motion to dismisss, defendant challenges the sufficiency of

Trelenberg's second amended complaint as to the third element.  Dkt. No. 32 at 12-16.  I agree

and find that the amended complaint fails to demonstrate a causal connection between

Trelenberg's report of her injury to human resources and her termination at least one year later.[4]

Defendant asserts that because Trelenberg reported her alleged injury to human resources in August 2007 and was not fired until April 2009, the length of time between the protected activity and the adverse action is too great to infer causation.  Id. at 13.  Trelenberg must show either "an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory activity," a "pattern of antagonism coupled with timing to establish a causal link" or an inference of causation from the "evidence gleaned from the record as a whole" in order to satisfy the causation element of her retaliation claim.  Griesbaum v. Aventis Pharm., 259 F. App'x 459, 466-467 (3d Cir. 2007) (additional citations omitted).  Though the Court of Appeals has "declined to establish a bright line rule dictating a specific amount of time [between protected activity and adverse employment action] . . . in order for the court to find an 'unusually suggestive temporal proximity,'" Morrin v. Torresdale Frankford Country Club, No. 07-5527, 2008 WL 2389469, at *7 (E.D. Pa. June 11, 2008), it has held that adverse employment action taken approximately one year after an employee engages in a protected activity is not an unusually suggestive interval.  Griesbaum, 259 F. App'x at 467.[5]

In her amended complaint Trelenberg asserts that she provided Ginnocchio with doctor's notes about her injury and lifting restriction on July 11 and July 20, 2006 and on August 28, 2007.  Dkt. No. 30 at ¶¶ 22, 25, 42.  She alleges that on September 6, 2007 she gave a "report" to Ginnocchio authored by another doctor describing her wrist condition as chronic, detailing the lifting restrictions, and concluding that she was "otherwise able to perform the essential

---

[4]   Though I considered this claim and found the allegations sufficient in my opinion on defendant's first motion to dismiss (Dkt. No. 28 at 17-22), after further consideration in light of the allegations in plaintiff's second amended complaint I must reexamine this claim here and reach a different outcome.

[5]   Conversely, the Court of Appeals has recognized that an interval of three days is unusually suggestive.  Doe v. C.A.R.S. Prot. Plus., 527 F.3d 358, 369 (3d Cir. 2008).

functions of the job." Id. at ¶ 44. She states that she "filled out" a workers' compensation form

in August, 2007. Id. at ¶ 45. Recognizing that each of these instances constitutes protected

employee activity and that she was not fired until April 15, 2009, more than two years after her

first complaint to Ginnocchio, I do not find that this interval constitutes temporal proximity

suggestive of retaliation. Even the latest of the complaints about her wrist injury that Trelenberg

describes in her second amended complaint, August, 2007, demonstrates an interval of more than

one year, which as stated, is not unusually suggestive of retaliation. Trelenberg has not

demonstrated suspicious timing to raise an inference of causation.

Importantly, it also appears that the alleged pattern of antagonism targeting Trelenberg

for the help she required with heavy lifting far pre-dates her wrist injury and diagnosis.

Trelenberg contends that more than a year before her wrist was injured her co-worker "yelled

and screamed at her" and "refused to help her [deliver 50 boxes of copy paper.]" Dkt. No. 30 at

¶ 16. She also claims that months before her injury Ginnocchio complained that Trelenberg

asked for help with lifting and delivering copy paper and "drove everyone crazy." Id. at ¶ 17.

Therefore, the allegations that Trelenberg presents to demonstrate disability discrimination are

more properly understood as allegations supporting Trelenberg's hostile work environment

claim. I find that Trelenberg has not alleged a pattern of antagonism that evidences a causal link

between her termination and her alleged disability.

Trelenberg may have also alleged sufficient evidence to demonstrate a pattern of

antagonism that post-dates her injury, but again only presents facts that demonstrate antagonism

due to her age, Dkt. No. 30 at ¶ 29, race and national origin, id. at ¶¶ 32-36. Trelenberg claims

that "Jim Weir locked the door to prevent [p]laintiff from getting into the elevator" and that "Jim

Weir also repeatedly . . . [referred to Trelenberg as] 'Made in Taiwan.'" Dkt. No. 30 at ¶¶ 27,

11

33.   She also claims that when she complained to Ginnocchio about the temperature in the

mailroom he "told her she must be having hot flashes."  Id. at 29.  Trelenberg's only allegation

of misconduct relating to her claimed disability is her assertion that on October 23, 2008 her

supervisor Barbara McCormick "asked her not to report the national origin, disability, and racial

harassment directed at her in the mailroom to the human resources department."  Dkt. No. 30 at

6.  However this assertion alone is insufficient to show that she is entitled to relief.  Trelenberg

concedes that supervisors instructed her to complete a workers' compensation claim form and

that she did so, but as defendant points out, Trelenberg does not allege that defendant did

anything improper with this claim form or otherwise failed to satisfy any responsibility for

processing it.  I do not interpret this evidence to show a pattern of antagonism due to

Trelenberg's alleged disability and find that Trelenberg has failed to plead sufficient facts to

support the causation element of her retaliation claim.

Though leave to amend shall be freely given when justice so requires, "the grant or denial

of an opportunity to amend is within the discretion of the District Court . . . ."  Foman v. Davis,

371 U.S. 178, 182 (1962).  Leave to amend may be denied where there is "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc."  Id. at 182.  Amendment is futile when "the complaint,

as amended, would fail to state a claim upon which relief could be granted."  In re Merck & Co.

Sec., Derivative, & ERISA Litig., 493 F.3d 393, 400 (3d Cir. 2007).  I find that, even

considering the allegations added in Trelenberg's response to defendant's motion, leave to

amend would be futile because Trelenberg has not established any reason for me to believe that

she can provide sufficient evidence to satisfy the causation element of her retaliation claim.

The Court of Appeals has stated that "it is important to emphasize that it is causation, not temporal proximity itself that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1977).  Further amendment would be futile because Trelenberg's additional allegation that she reported harassment due to her wrist injury to Scott Kleiss the day before her termination does not mitigate in favor of causation considering that she had already reported her alleged disability several times and that her supervisors had knowledge of her wrist injury for at least a year prior to her termination. Granting Trelenberg leave to amend her complaint a third time in order to properly allege this fact would be insufficient to establish causation.  Because defendant took no adverse employment action for at least one year after learning that Trelenberg's alleged condition was chronic, and because there are no facts demonstrating a pattern of antagonism due to her alleged disability during the period leading up to the termination of her employment, I find that plaintiff cannot state a claim for retaliation under the ADA.  Additionally, plaintiff has had multiple opportunities to plead correctly and to cure deficiencies in her complaint.  Therefore, I will grant defendant's motion to dismiss Count II of Trelenberg's second amended complaint.

An appropriate Order follows.